**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
*Alexandria Division*

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**ex rel., UNDER SEAL**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**UNDER SEAL**<br><br>        **Defendants.** | Case No. 1:22-CV-01463<br><br>**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. § 3729** *et seq.*<br><br>**FILED UNDER SEAL**<br><br>**JURY TRIAL DEMANDED** |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
*Alexandria Division*

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ex rel., <br><br> **NORA TAYLOR** <br> 13520 5th Corps Lane <br> Fredericksburg, VA 22407 <br><br> **AND** <br><br> **MARTHE LATTINVILLE-PACE** <br> 205 Castle Hill Dr., <br> Fredericksburg, VA 22406 <br><br> **Plaintiffs,** <br><br> v. <br><br> **INTELLIGENT WAVES, LLC** <br> 1801 Robert Fulton Dr., <br> Suite 440 <br> Reston, VA 22191 <br><br> <u>Registered Agent:</u> <br> Harvard Business Services, Inc. <br> 16192 Coastal Hwy <br> Lewes, DE 19958 <br><br> **AND** <br><br> **JARED SHEPARD** <br> 630 Brockman Court <br> Great Falls, VA 22066 <br><br> **Defendants.** | Case No._____ <br><br> **Complaint for Violations of the Federal False Claims Act, 31 U.S.C. § 3729** *et seq.* <br><br> **FILED UNDER SEAL** <br><br> **JURY TRIAL DEMANDED** |

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 2 -

## INTRODUCTION

1.    *Qui tam* Relators Nora Taylor ("Taylor") and Marthe Lattinville-Pace ("Lattinville-Pace") (collectively, "Relators"), by and through counsel, individually, and on behalf of the United States of America, bring this action against Defendants Intelligent Waves, LLC ("IW") and Jared Shepard ("Shepard") ("collectively, "Defendants") for money damages and civil penalties arising out Defendants violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.*

2.    IW is an information technology professional services provider to the government in cybersecurity, data science, enterprise network engineering, software development, and platform mission support.

3.    Jared Shepard is IW's owner, founder, and chairman of the medicine. He served as IW's CEO from 2006 to January 2022.

4.    Relator Taylor joined IW in or around August 2019 as a Consultant in contract management and review, and in or around December 2019 became the Vice President of Contracting and Compliance.

5.    Relator Lattinville-Pace joined IW on or around April 1, 2019, as the Senior Vice President of Human Resources.

6.    Defendants acted to defraud the United States government by providing and invoicing unauthorized equipment under the terms of the Crowd-Sourced Data Collection Support Contract ("Crowd-Sourced Contract") the U.S. Air Force awarded to Defendants, and by extension defrauded the United States of America in violation of False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 3 -

7.      Once Relator Taylor began to raise concerns about the unauthorized equipment sent to the government, she was terminated in or around May 2021 stating that it was due to financial reasons.

8.      Once Relator Lattinville-Pace began to raise concerns about IW's improper hiring procedures, she was terminated on or around July 22, 2020, stating that she was not a good culture fit.

9.      Relators believe this fraudulent scheme is continuing in nature, through the present, and has caused damages to the federal plaintiff.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action arises out of the laws of the United States, specifically 31 U.S.C. § 3729 *et seq.*

11.     This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants are located and transact business in this judicial district.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants offices are in this judicial district.

13.     This action is not based on a "public disclosure." This action is based on information that is within the direct and independent knowledge of the Relators. Relators have provided said information to the Government prior to filing this action.

14.     The Relators are the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and have direct and independent knowledge of the allegations set forth in this Complaint.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 4 -

15.     Pursuant to 31 U.S.C. § 3730(b)(2), Relators have provided the Government with a copy of this Complaint and a written disclosure of substantially all material, evidence, and information in their possession.

## PARTIES

**Relators**

***Nora Taylor***

16.     Nora Taylor is a citizen of the United States and a resident of Fredericksburg, Virginia.

17.     Relator Taylor received her Associates of Science in Business Administration from the Delaware County Community College.

18.     Relator Taylor received two Master Certificates from Villanova University. One in Government Contract Management and a another one in Commercial Contract Management.

19.     Prior to working at IW, Relator Taylor worked as a Director of Contracts and Compliance in Artel, LLC and as a Managing Director and Principal Consultant at NET, LLC.

20.     Relator Taylor joined IW as a Consultant in or around August 2019.

21.     As a Consultant, her role focused on contract management and review, thus, she performed day-to-day contract review, although she was originally hired to implement a contract managing process.

22.     In or around December 2019, Relator Taylor began a new position at IW as the Vice President of Contracting and Compliance.

23.     Her new role focused on negotiating and establishing contracts.

24.     In or around May 2021, Relator Taylor was terminated after raising concerns

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 5 -

about improper invoices submitted under the Crowd-Sourced Contract, claiming that it was due to financial reasons.

***Marthe Lattinville-Pace***

25.     Marthe Lattinville-Pace is a citizen of the United States and a resident of Fredericksburg, Virginia.

26.     Relator Lattinville-Pace received her Bachelor of Science in Industrial Relations at the University of Montreal.

27.     Relator Lattinville-Pace received a Master's in Business Administration from HEC Montreal University.

28.     Prior to joining IW, Relator Lattinville-Pace worked as the Vice President of Human Resources and Senior Consultant at Madison Marquette, Human Resources Consultant at UltiSat Inc. and as the Director of Human Resources at Lycée Rochambeau.

29.     Relator Lattinville-Pace joined IW as the Senior Vice President of Human Resources on or around April 1, 2019.

30.     One of her duties included handling compliance issues at IW's human resources office.

31.     On or around July 22, 2022, Relator Lattinville-Pace was terminated after raising concerns about improper hiring procedures under the Crowd-Sourcing Contract, claiming that Relator Lattinville-Pace was not a good culture fit.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 6 -

**Defendants**

*Intelligent Waves ("IW")*

32.    IW delivers mission-focused multi-domain operational expertise to the

Government through technology solutions in cybersecurity, data science, enterprise network and

system engineering, software development, and platform mission support.

33.    IW is located at 1801 Robert Fulton Dr., Suite 440, Reston, VA 20191.

34.    IW incorporated as a limited liability company on or around September 26, 2006,

in the State of Delaware.

35.    Additionally, IW registered as a limited liability company in Washington, DC on

or around August 25, 2020.

36.    In or around 2006, IW began working with federal agencies including the

Department of Defense ("DoD").

37.    Tony Crescenzo is IW's CEO since in or around January 2022.

*Jared Shepard ("Shepard")*

38.    Jared Shepard is a citizen of the United States and a resident of Great Falls,

Virginia.

39.    Shepard is IW's founder and owner. He served as IW's CEO from 2006 until in or

around January 2022.

40.    Shepard currently serves as the Chairman of IW's Board.

41.    Additionally, ▮▮▮▮▮▮▮▮▮▮▮▮

company. He took over this position in or around June 2020.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 7 -

42. ████████████ was a division within IW until in or around August or September 2020, when it became IW's sister company.

## BACKGROUND

### I.    The False Claims Act ("FCA")

43.    The False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a)(1)(A).

44.    The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

45.    The term "knowingly" as used in the FCA means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b).  No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA. *Id.*

46.    Any person who violates the FCA is liable for civil penalties between $12,537.00 and $25,076.00 per false claim prior to November 2, 2015, as adjusted for inflation, plus three times the amount of damages that the Government sustains as a result of the defendant's actions. 31 U.S.C. § 3729(a), 28 C.F.R. § 85.5.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 8 -

## II.    Federal Acquisition Regulation ("FAR")

**Overview**

47.    The Federal Acquisition Regulation ("FAR") is the principal set of regulations governing the acquisition of goods and services by the executive agencies of the United States.

48.    The FAR was established to codify uniform policies for the acquisition of goods and services by executive agencies.

49.    The FAR includes provisions governing each stage of the acquisition process, including competition and acquisition planning, contracting methods and contract types, general contracting requirements, and contract management.

50.    For the purposes of the FAR, "acquisition" means the acquiring by contract with appropriated funds of supplies or services by and for the use of the Federal Government through purchase or lease, whether the supplies or services are already in existence or must be created, developed, demonstrated, or evaluated. FAR Part 2.101.

51.    Acquisition begins at the point when agency needs are established and includes the description of requirements to satisfy agency needs, solicitation and selection of sources, award of contracts, contract financing, contract performance, contract administration, and those technical and management functions directly related to the process of fulfilling agency needs by contract. *Id.*

52.    The requirements for acquisitions as set forth in the FAR apply to all contracts involving acquisitions by the federal government. The provisions of the FAR are applicable to federal contractors through the incorporation of the mandatory contract clauses and provisions set forth in the FAR into all contracts between the federal government and its contractors. *See*

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 9 -

FAR Part 52.

**Provisions Regarding Commercial and Non-Commercial Items**

53.     For the purposes of the FAR, a commercial item is any item, other than real property, that is of a type customarily used by the general public or by non-governmental entities for purposes other than governmental purposes, and

a.  Has been sold, leased, or licensed to the public; or,

b.  Has been offered for sale, lease, or license to the general public.

*See* FAR Part 2.101.

54.     An item may be classified as commercial if it evolved from such an item as described above through advances in technology or performance and that is not yet available in the commercial marketplace, but will be available in the commercial marketplace in time to satisfy the delivery requirements under a Government solicitation. *Id.*

55.     Put simply, a material, supply, or service may be commercial if it is available on the marketplace for any purchaser to purchase at a cost ascertainable by the purchaser.

56.     An item may be classified as commercial if it meets the requirements above, but for modifications of a type customarily available in the commercial marketplace, or minor modifications of a type not customarily available in the commercial marketplace made to meet Federal Government requirements. *Id.* [hereinafter "commercial of-a-type"].

57.     Minor modifications mean modifications that 1) do not significantly alter the nongovernmental function or essential physical characteristics of an item or component, or 2) change the purpose of a process. *Id.*

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 10 -

58.    Installation services, maintenance services, repair services, training services, or other services may be classified as commercial if:

    a.  Such services are procured for support of a commercial item, regardless of whether such services are provided by the same source or at the same time as the item; and

    b.  The source of such services provides similar services contemporaneously to the general public under terms and conditions similar to those offered to the Federal Government.

     *See* FAR Part 2.101 (emphasis added).

59.    Services may also be considered commercial if they are services of a type offered and sold competitively in substantial quantities in the commercial marketplace based on established catalog or market prices for specific tasks performed or specific outcomes to be achieved and under standard commercial terms and conditions.

60.    Contracts and subcontracts for the acquisition of commercial items are exempt from the FAR's Cost Accounting Standards. 48 C.F.R. § 9903.201-1. The FAR's Cost Accounting Standards are outlined in FAR Part 30 and described in the section below.

61.    Contracts and subcontracts for the acquisition of commercial items are also exempt from TINA. *See* FAR Part 15.403-1(b)(3); *see also* FAR Part 15.403-1(c)(3).

**Provisions Regarding Cost Accounting Standards**

62.    The Cost Accounting Standards Board ("CASB") is an independent board in the Office of Federal Procurement Policy. 41 U.S.C. § 1501(a).

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 11 -

63.     The CASB sets forth the cost accounting standards ("CAS") to be used by Federal contractors. 41 U.S.C. § 1501(c).

64.     The cost accounting standards adopted by the CASB are codified in 48 C.F.R. §§ 9904.400 *et seq.* The FAR incorporates these cost accounting standards in FAR Part 30.101(b).

65.     The rules for determining whether a proposed contract or subcontract is exempt from CAS are described in 48 C.F.R. § 9903.201-1. There are 9 categories of contracts and subcontracts that are exempt from CAS. Among them are:

    a.  Contracts and subcontracts authorized in 48 C.F.R. 12.207 for the acquisition of commercial items, and

    b.  Negotiated contracts and subcontracts not in excess of the TINA threshold, as adjusted for inflation. *See* 41 U.S.C. § 1908; 41 U.S.C. § 1502(b)(1)(B)).

66.     The CASB has adopted 19 cost accounting standards. Among them are regulations regarding:

    a.  Consistency in Estimating, Accumulating, and Reporting Cost

    b.  Consistency in Allocating Costs Incurred for the Same Purpose

    c.  Accounting for Unallowable Costs

    d.  Use of Standard Costs for Direct Material and Direct Labor

    e.  Allocation of Business Unit General and Administrative Expenses to Final Cost Objectives

    f.  Allocation of Direct and Indirect Costs

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 12 -

g. Accounting for Independent Research and Development Costs and Bid and Proposal Costs

*See generally* 48 C.F.R. 9904.400-9904.420.

67.    Government contractors that administer contracts that do not meet one of the exceptions set forth in 48 C.F.R. § 9903.201-1 are responsible for implementing cost accounting systems that are compliant with CAS.

**Provisions Regarding Allowability**

68.    The FAR sets forth regulations that govern the allowability, reasonableness, and allocability of costs charged to the federal government.

69.    A cost is allowable only when the cost complies with all of the following requirements:

a. Reasonableness

b. Allocability

c. Standards promulgated by the CASB, if applicable, otherwise, generally accepted accounting principles ("GAAP") and practices appropriate to the circumstances

d. Terms of the contract

e. Any other limitations set forth in FAR Part 31

*See* FAR Part 31.201-2.

70.    A contractor is responsible for accounting for costs appropriately and for maintaining records, including supporting documentation, adequate to demonstrate that costs claimed have been incurred, are allocable to the contract, and comply with applicable cost

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 13 -

principles in FAR Subpart 31.201 and agency supplements. The contracting officer may disallow all or part of a claimed cost that is inadequately supported. FAR Part 31.201-2(d).

71.    When contractor accounting practices are inconsistent with FAR Part 31.2, costs resulting from such inconsistent practices in excess of the amount that would have resulted from using practices consistent with this subpart are unallowable. FAR Part 31.201-2(c).

72.    A cost is allocable if it is assignable or chargeable to one or more cost objectives on the basis of relative benefits received or other equitable relationship. A cost is allocable if it:

    a.  Is incurred specifically for the contract;

    b.  Benefits both the contract and other work, and can be distributed to them in reasonable proportion to the benefits received; or

    c.  Is necessary to the overall operation of the business, although a direct relationship to any particular cost objective cannot be shown.

       *See* FAR Part 31.201-4.

73.    Where a cost does not meet the requirements set forth in FAR Part 31.201, it is unallowable.

74.    An expressly unallowable cost is a particular item or type of cost which, under the express provisions of an applicable law, regulation, or contract, is specifically named and stated to be unallowable. 48 C.F.R. § 9904.405-30(a)(2).

75.    An unallowable cost is any cost which, under the provisions of any pertinent law, regulation, or contract, cannot be included in prices, cost reimbursements, or settlements under a Government contract to which it is allocable. 48 C.F.R. § 9904.405-30(a)(4).

76.    A directly associated cost is any cost which is generated solely as a result of the

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 14 -

incurrence of another cost, and which would not have been incurred had the other cost not been incurred. 48 C.F.R. § 9904.405-30(a)(1).

77.     Costs that are expressly unallowable or mutually agreed to be unallowable, including mutually agreed to be unallowable directly associated costs, shall be identified and excluded from any billing, claim, or proposal applicable to a Government contract. When an unallowable cost is incurred, its directly associated costs are also unallowable. FAR Part 31.201-6(a).

78.     Expressly unallowable costs include interest expenses, donations and contributions, entertainment, contingencies, bad debts, fines and penalties, goodwill, losses on contracts, and organizational expenses, alcohol, promotion, costs associated with items and services for personal use, profit distributions, legal costs, and travel costs that exceed applicable per diem rates. *See generally* FAR Part 31.205.

79.     When submitting a proposal to the federal government, contractors must certify that unallowable costs have not been incorporated into indirect cost rates or billing rates. *See* FAR Part 42.700-42.704.

80.     Pursuant to 10 U.S.C. § 2324(h) and 41 U.S.C. § 4307, contractors who submit a proposal to the federal government must include a certificate of indirect costs.

81.     The penalties for submission of unallowable costs in final indirect cost rate proposals or the final statement of costs incurred or estimated to be incurred under a fixed-price incentive contract are prescribed in 10 U.S.C. § 2324(a) and 41 U.S.C. § 4303. *See* FAR Part 42.703-2(e); FAR Part 42.709-1(a)(1)-(2).

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 15 -

**Provisions Regarding Reasonableness of Costs**

82.    Final agreed-to prices in government contracts must be fair and reasonable. *See* FAR Part 15.404-1.

83.    Pursuant to FAR Part 15.404-1, the contracting officer is responsible for evaluating the reasonableness of offered prices.

> Contractors are responsible for bringing to the attention of the contracting officer any discrepancies or mistakes of fact contained in certified cost or pricing data, or data other than certified cost or pricing data. *See* FAR Part 15.404-1(a)(6).

84.    FAR Part 52 gives instructions for using provisions and clauses in solicitations and contracts.

85.    Contractors who submit solicitations to enter into, or ultimately do enter into contracts with the federal government are required to include the provisions and contract clauses applicable to the solicitation or contract pursuant to the regulations set forth in FAR Part 52.

86.    When a solicitation provision or contract clause uses a word or term that is defined in the FAR, the word or term has the same meaning as the definition in FAR 2.101 in effect at the time the solicitation was issued, unless:

  a.  The contract provides a different definition;

  b.  The contracting parties agree to a different definition;

  c.  The part, subpart, or section of the FAR where the provision or clause is prescribed provides a different meaning; or

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 16 -

d. The word or term is defined in FAR Part 31, for use in the cost principles and procedures.

*See* FAR Part 52.202-1.

## III.     Defense Federal Acquisition Regulation Supplement ("DFARS")

**Overview**

87.     The term "defense acquisition system" refers to the workforce engaged in carrying out the acquisition of property and services for the DoD, the management structure responsible for directing and overseeing the acquisition of property and services for the DoD; and the statutory, regulatory, and policy framework that guides the acquisition of property and services for the DoD. 10 U.S.C. § 2545(2).

88.     The defense acquisition system exists to manage the investments of the United States in technologies, programs, and product support necessary to achieve the national security strategy prescribed by the President pursuant to section 108 of the National Security Act of 1947 (50 U.S.C. § 3043) and to support the United States Armed Forces. DFARS art 201.101(1).

89.     The DFARS is a supplement to the FAR that provides DoD-specific acquisition regulations that defense acquisition system officials and contractors doing business with the DoD must follow in the procurement process for goods and services.

90.     The DFARS may augment certain requirements set forth in the FAR depending on the nature of the contract or subcontract.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 17 -

**Commercial Item Determinations**

91.   When using FAR Part 12 procedures for acquisitions exceeding $1 million in value, except for acquisitions made pursuant to FAR Part 12.102(f)(1),the contracting officer is required to include a commercial item determination ("CID") in the contract file. *See* DFARS 212.1.

92.   The CID essentially conveys to the government that an item or service meets the definition for "commercial" as set forth in FAR Part 2.101.

93.   When a CID relies on subsections (1)(ii) [the item has been offered for sale, lease, or license to the general public], (3) [commercial of-a-type items], (4) [any combination of items that are of a type customarily combined and sold in combination to the general public], or (6) [services of a type offered and sold competitively in substantial quantities in the commercial marketplace] of the "commercial item definition at FAR Part 2.101, the contracting officer must also obtain approval of the commerciality determination at one level above the contracting officer."

94.   Contractors are responsible for determining whether a particular subcontract item meets the definition of a commercial item. Contractors are expected to exercise reasonable business judgment in making such determinations, consistent with the guidelines for conducting market research as set forth in FAR Part 10. DFARS 244.402(a).

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 18 -

## IV.    The Truth in Negotiations Act ("TINA")

95.    TINA requires contractors to provide certified cost or pricing data to the government for acquisitions at or below the simplified acquisition threshold. *See* 10 U.S.C. § 2306a; *see also* 41 U.S.C. §§ 3501-3509.

96.    The simplified acquisition threshold is the dollar amount below which a contractor may purchase property or services using small purchase methods, also known as simplified acquisition procedures.

97.    Simplified acquisition procedures are a set of streamlined procedures designed for the purchase of relatively simple supply or service requirements.

98.    The FAR requires that contracting officers obtain certified cost or pricing data from the contractor pursuant to TINA where the contracting officer concludes that none of the exceptions specified in the FAR apply to the contract. *See generally* FAR Part 15.403-4.

99.    A contractor or subcontractor required to submit cost or pricing data under TINA is required to certify that, to the best of the person's knowledge and belief, the cost or pricing data submitted are accurate, complete, and current. *See* 10 U.S.C. § 2306a(a)(2).

100.    If the United States makes an overpayment to a contractor under a contract subject to 10 U.S.C. § 2306a (TINA) and the payment was due to the submission by the contractor of defective cost or pricing data, the contractor shall be liable to the United States for interest on the amount of such overpayment, *see* 10 U.S.C. § 2306a(f)(1)(A)(i)-(ii), and, if the submission of such defective data was a knowing submission, for an additional amount equal to the amount of the overpayment, *see* 10 U.S.C. § 2306a(f)(1)(B).

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 19 -

## FACTUAL ALLEGATIONS

**IW is Awarded the Crowd-Sourced Data Collection Support Contract**

101.    In or around September 2019, IW secured the Crowd-Sourced Data Collection Support Contract ("Crowd Sourced Contract"), Contract # FA486119DA005, with the U.S. Air Force. This indefinite delivery, indefinite quantity contract has a ceiling amount of $89,200,000.00 over a period of five years.

102.    Under the Crowd-Sourced Contract, IW must provide the 53rd Wing, the 53rd Test and Evaluation Group, and operational flight tests organizations with expertise and support for flight mission instrumentation, data acquisition, data processing, and related knowledge management support.

103.    In essence, IW is responsible for providing staff, training, and the equipment necessary to ████████████

104.    IW's primary point of contact for the Crowd-Sourced Contract in the government is Paul Martinez, regularly referred to as "PK" ("Martinez"). Martinez is the Director of the Flight Test Data Center and the customer under the Crowd-Sourced Contract. He is not; however, the contracting officer.

105.    Initially, the contracting officer was Caley Horton, but she was deployed roughly six months after the Crowd-Sourced Contract was awarded.

106.    Following Horton's deployment, Kenneth Herrell ("Herrell") became the contracting officer.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 20 -

107.    Initially, the Crowd-Sourced Contract had no materials specifications; however, in or around early 2020 a series of negotiations began to modify the contract to add materials specifications.

108.    Consequently, the contract went through a series of negotiations and modifications that were completed in or around September 2020 under Contract Modification # FA486120F0281P00001.

109.    These modifications specified materials that were approved and appropriate, prices that were fair and appropriate, and a series of stipulations including that any purchase order or final pricing quote for invoices under the contracted had to be approved through IW's contracting department before they were sent to the government.

**IW Sells Unauthorized IT Equipment Under the Crowd Sourced Contract**

110.    Despite contract modifications that focused on material specification, IW receives purchase orders with appropriate materials under the terms of the Crowd-Sourced Contract but delivers different, and unapproved, items than those requested in the purchase orders.

111.    According to Relator Taylor, someone in her role as Vice President of Contracts and Compliance, is supposed to receive monthly reports to verify that activities performed under every contract complies with its terms.

112.    At IW, however, Relator Taylor had little access and oversight over contract compliance despite her role at IW.

113.    Program managers at IW handle every aspect of their assigned contracts, including its compliance.

114.    Jeffrey Ruszcyk ("Ruszcyk") is the Crowd-Sourced Contract's program manager.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 21 -

115.    The Crowd-Sourced Contract; however, is treated differently from other contracts at IW.

116.    Ruszcyk only handles labor in the Crowd-Sourced Contract.

117.    IW's sales department handles materials ordered under the Crowd-Sourced Contract.

118.    IW's sales department is called the Value-Added Reseller Group and it was led by Erin Horrell, IW's Chief Growth Officer.

119.    Relator Taylor did not receive information as a matter of course from the sales department regarding the materials requested under the Crowd-Sourced Contract.

120.    Even when Taylor requested information, she received vague responses regarding any matter handled by IW's sales department.

121.    Amber Furstenberg ("Furstenberg"), a member of the sales department, was selected as the point of contact for the Crowd-Sourced Contract.

122.    Due to the separate channels for handing materials, despite being the contracting officer, Ruszcyk frequently learned about materials decisions after they had already been made.

123.    This procedure affects his ability to oversee the contract and ensure proper compliance and oversight.

124.    Because of this, Furstenberg negotiated directly with vendors, provided pricing quotes, and unilaterally handled all aspects related to materials in the Crowd-Sourced Contract.

125.    When the government, through Martinez, requested materials, Furstenberg prepared a quote based on the Crowd-Sourced Contract's approved materials.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 22 -

126.    Once prepared, Furstenberg provided it to Martinez, who would issue it to the contracting officer, Herrell.

127.    Herrell would then make the official purchase order.

128.    Once Herrell made the purchase order, however, Furstenberg provided different materials than the ones stated in the order. The order stated materials that were appropriate under the Crowd-Sourced Contract's terms, but the description demonstrated that they were different items than the ones ordered.

129.    In or around September 2020, Herrell sent a purchase order and, likely accidentally, copied Relator Taylor, which led Relator Taylor to discover IW's fraudulent practices.

**Relator Taylor Discovers that IW Provides Improper Materials Under the Terms of the Crowd-Sourced Contract**

130.    As mentioned above, the modifications made to the Crowd-Sourced Contract included a series of changes about which materials were approved and appropriate to fulfill its terms.

131.    Herrell made a purchase order in or around September 2020, after modifications to the Crowd-Sourced Contract were finalized and before the end of the government's fiscal year.

132.    The government's fiscal year ends on September 30.

133.    Once Relator Taylor reviewed the email with the purchase order, Relator Taylor set up a meeting with the engineers, Ruszcyk, and a representative from accounting to every party had all the necessary information and direction to complete the order.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 23 -

134.   At the meeting, several people attended the meeting who were not initially invited. including Shepard and Horrell. This surprised Relator Taylor.

135.   During the meeting, the director of the sales engineering department, Christopher Perry ("Perry"), questioned why orders stated one thing but IW delivered another.

136.   Relator was unaware of this fact and after the meeting, Relator Taylor began reviewing purchase orders, and noticed that there were indeed purchase orders that stated one thing, but IW delivered a different one.

137.   Upon further review, Relator Taylor traced the source of the issue to IW's sales department.

138.   Relator Taylor discovered that Furstenberg was improperly submitting pricing directly to Martinez without review by IW's internal contracting department as required by the Crowd-Sourced Contract's finalized September 2020 modifications.

139.   Furstenberg repeatedly bypassed this protocol without authorization.

140.   Upon further review of the purchase orders through a review of invoices, internal emails, and holding calls with IW's CFO, Pat Herrity ("Herrity") and Horrell, Relator Taylor discovered that Furstenberg sold IT equipment to the government that was neither included nor authorized under the terms of the Crowd-Sourced Contract modifications.

141.   Furstenberg replaced the agreed upon technology with different materials despite not being authorized to do so.

142.   Furthermore, Furstenberg quoted prices that were not stated in the Crowd-Sourced Contract. Furstenberg received orders, requested different and unauthorized materials from the engineering department, and invoiced the materials as if they were the ones requested.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 24 -

143.    For example, order FA486120F0372 listed the followin█████████████, but the description demonstrated that different equipment was delivered:

a.███████████            : (1 per 250 users) – 3 units: These were the stated items in the invoice but were neither sold nor delivered to the customer for a total of $59,107.92. Relator is unsure of what was provided instead.

b.███████████            – 13 units: These were the stated items in the invoice but were neither sold nor delivered to the customer for a total of $13,186.03. Relator is unsure of what was provided instead.

144.    In invoice VAR 20-0352, Relator Taylor additionally encountered invoices in which the following information was misclassified:

a.███████████████            : The description in the invoice states that it is 

███████████            These descriptions, however, do not match the item supposedly sold. According to IW's workbooks that Relator Taylor reviewed, instead of ███████████████            the government was instead provided with Dell computers.

b.███████████            The description in the invoice state that it is "STK= Systems Engineer III (Hourly

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 25 -

Labor) – Qty 50 hours." They billed for hardware, but the description states labor was provided instead.

145. In or around October 2020, Relator Taylor raised this issue with Herrity and Horrell and they stated that they would investigate it, however, nothing changed.

146. After Relator Taylor raised her concerns again and pushed for more access to contract compliance, Horrell and Herrity agreed that they could set meetings so the sales department and Horrell could inform her of what was occurring in the contract.

147. During these meetings that included Horrell, Furstenberg, Ruszcyk, and other employees from the sales department, Furstenberg did not provide detailed information regarding her work.

148. Furstenberg only mentioned the opportunities she was working on and their status, but she never discussed the specifics about her work.

149. Once Relator Taylor informed Herrity and Horrell about the improper materials that IW kept delivering to the U.S. Air Force, Horrell confronted Furstenberg, and she stated that she was doing it because the government had requested the alternate materials.

150. However, Furstenberg's statement was contradicting since IW and the government had just engaged in nine months of modification negotiations for the materials it deemed acceptable to fulfill the contract's requirements.

151. IW conducted a detailed review of Furstenberg's email and work product in or around December 2020. During the review, IW discovered that Furstenberg and Martinez were engaged in a romantic affair. This affair likely affected the manner in which Furstenberg handled

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 26 -

requests from Martinez under the Crowd-Sourced Contract. Furstenberg was subsequently terminated.

152.    After Furstenberg's termination, Relator Taylor instituted a policy over email requiring that she be copied on all communication related to the Crowd-Sourcing Contract and purchasing orders.

153.    Once instituted, Relator Taylor received many but not all of the emails sent.

154.    The government made payments for all of the improper equipment and services unauthorized under the Crowd-Sourced Contract.

155.    Ultimately, Relator Taylor was terminated in or around May 2021 after raising these concerns, claiming that it was due to financial reasons.

156.    Relators believe this fraudulent behavior is continuing in nature.

**COUNT I**
**Defendants Knowingly Present or Cause to be Presented False Claims**
**to the Government in Violation of the False Claims Act**
**31 U.S.C. § 3729(a)(1)(A)**

157.    Relators incorporate all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

158.    The False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a)(1)(A).

159.    Defendants knowingly present or cause to be presented to the United States, false claims, in order to obtain payment or approval when they provide unauthorized equipment under the Crowd-Sourced Contract requirements Defendants have with the United States Air Force.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 27 -

160.    The United States, unaware of the falsity of the claims by the Defendants, and in reliance on the accuracy thereof, pay Defendants for such false claims.

161.    The United States of America has been damaged by the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

## COUNT II
### Defendants Knowingly Made or Cause to be Made False Records To Acquire False Claims in Violation of the False Claims Act 31 U.S.C. § 3729(a)(1)(B)

162.    Relators incorporate all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

163.    Defendants knowingly made, used, or caused to be made a false record to acquire a fraudulent claim and payment from the government, in violation of 31 U.S.C. § 3729(a)(1)(B).

164.    31 U.S.C. § 3729(a)(1)(B) imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."

165.    Defendants violate § 3729(a)(1)(B) through creating records that portray unauthorized information technology equipment as authorized equipment to falsely fulfill its contractual duties.

166.    The United States of America has been damaged by the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

- 28 -

## PRAYER FOR RELIEF

WHEREFORE, Relators respectfully request that this Court enter judgment against the Defendant as follows:

(a)    That this Court enter judgment against the Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus the maximum civil penalties for each violation of the Federal False Claims Act;

(b)    That Relators be awarded all costs incurred, plus reasonable attorneys' fees and expenses, in accord with 31 U.S.C. § 3730(d);

(c)    That, in the event the United States Government elects to intervene in and proceed with this action, Relators be awarded between 15% and 25% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(1);

(d)    That, in the event that the United States Government does not proceed with this action, Relators be awarded between 25% and 30% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(2);

(e)    That, pursuant to 31 U.S.C. § 3730(c)(5), Relators be awarded a share of any alternate remedy that the United States Government elects to pursue;

(f)    That permanent injunctive relief be granted to prevent any recurrence of the False Claims Act conduct described above for which redress is sought in this Complaint;

(g)    That the United States and the Relators be awarded prejudgment and post judgment interest; and

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*

(h)     That the United States and the Relators receive all relief, both at law and in equity, to which they may be reasonably entitled.

(i)     For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relators hereby demands a jury trial.

December 23, 2022                    Respectfully Submitted,

R. Scott Oswald, Virginia Bar No. 41770
Lydia A. Pappas (to be admitted pro hac vice)
The Employment Law Group, P.C.
1717 K Street, N.W., Suite 1110
Washington, D.C. 20006
(202) 331-2813
(202) 261–2835 (facsimile)
soswald@employmentlawgroup.com
lpappas@employmentlawgroup.com

*Counsel for Relators Taylor and Lattinville-Pace*

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Marthe Lattinville-Pace, et al. v. Intelligent Waves, LLC, et al.*